IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBRA F. RUDERMAN, Individually and as a Trustee of the Debra Freed Ruderman Declaration of Trust Dated October 9, 1995, as Amended,<br><br>Plaintiff,<br><br>v.<br><br>LAURANCE H. FREED,<br><br>Defendant. | Case No. 14 C 9079<br><br>Judge Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Laurance H. Freed's ("Freed") Motion to Dismiss portions of Plaintiff Debra F. Ruderman's ("Ruderman") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) [ECF No. 27]. For the reasons stated herein, the Motion is granted in part and denied in part.

### I. BACKGROUND

The Court draws the following factual background from Ruderman's Complaint. Ruderman and Freed are siblings. Their father built a successful real estate business in Chicago (the "Business"), which Freed eventually took over.

Since 2000, the Business has been owned by DDL, an Illinois limited liability company. Freed serves as the sole manager and majority owner of DDL and is President of DDL's subsidiary, Joseph Freed and Associates LLC. Ruderman is a passive investor in the Business and owns a minority

interest in DDL. Ruderman's interest in DDL is held in a trust (the "Trust") for her and her children. Freed was previously a trustee for the benefit of Ruderman's children. Ruderman alleges that as the manager and owner of DDL, and as trustee, Freed owed her fiduciary duties.

Ruderman's Complaint details a number of transactions in which Freed either forged Ruderman's name onto certain documents or withheld material information from her. The first transaction occurred in 2004, when Freed determined that DDL should purchase a shopping center in Madison, Wisconsin from the University of Wisconsin Foundation ("UWF"). UWF advised Freed that DDL's owners — including Ruderman — would have to personally guarantee notes totaling $6 million. According to the Complaint, Freed or someone at his direction forged Ruderman's name on two guaranties (the "UWF Guaranties") without her knowledge or authorization. The UWF Guaranties purported to obligate Ruderman personally on $1.5 million. Freed or someone acting at his direction also forged Ruderman's name on other legal documents connected to the transaction, including the purchase agreement and a legal opinion certificate needed for closing. Although the purchase occurred in April 2004, Ruderman did not learn of the UWF Guaranties until March 2010. UWF later filed suit against Ruderman and Freed, and Ruderman ultimately settled with UWF.

The next transaction occurred in December 2007. Ruderman had recently received a $4.3 million distribution from DDL, which she deposited into investment accounts with Bank of America (the "Bank"). The Bank had been a lender to the Business and DDL, which still owed approximately $50 million on outstanding loans. In an effort to gain an

extension on the overdue loans, Freed agreed to pledge Ruderman's investment accounts as additional security. Without Ruderman's knowledge or authorization, Freed or someone at his direction signed a pledge agreement in Ruderman's name (the "Pledge"). Ruderman did not learn of the Pledge until October 2008.

By July 2008, the loans were still in default. The Bank agreed to another extension on the condition that Ruderman sign two forbearance agreements (the "Forbearance Agreements"). Freed obtained Ruderman's signature on the documents, but failed to disclose certain material facts about the forged Pledge, which the Forbearance Agreements purportedly validated. Less than two years later, in May 2010, the Bank acted on the Pledge and liquidated Ruderman's investment accounts in partial repayment of the loans.

The Complaint details six other documents to which Ruderman's name was allegedly forged by Freed or someone acting under his direction. These documents purport to assign Ruderman's or the Trust's interests, or pledge certain accounts belonging to Ruderman. Ruderman also alleges that Freed withheld from her material information concerning DDL and other entities in which they share an interest.

In November 2014, Ruderman filed the instant lawsuit. Her eight-count Complaint seeks an accounting, declaratory judgment, and Freed's expulsion from DDL. It also includes claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), breach of fiduciary duty, fraud and fraudulent concealment, breach of the DDL operating agreement, and violation of the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA"). Freed seeks to dismiss

portions of the RICO claim (Count I), the fraud and ICFA claims (Counts V and VII) in their entirety, and certain allegations relating to the Forbearance Agreements.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's allegations as true, and view them in the light most favorable to the plaintiff. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citation omitted). However, a court need not accept as true "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted).

Ruderman's RICO, common-law fraud, and ICFA claims are governed by Rule 9(b), a heightened pleading standard that requires a party to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). These circumstances include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply,*

*Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 668 (7th Cir. 2008) (citation omitted). Knowledge, intent, and other such mental states "may be averred generally." *Hefferman v. Bass,* 467 F.3d 596, 601 (7th Cir. 2006).

### III. ANALYSIS

#### A. Predicate Acts of Mail and Wire Fraud (Count I)

Ruderman builds the RICO claim in Count I on ten predicate acts of mail, wire, and bank fraud. Freed argues that the first two of these predicate acts — for mail and wire fraud — fail to meet the heightened pleading requirements of Rule 9(b).

RICO "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir. 2006). "Any person injured in his business or property by reason of a violation of section 1962" is authorized to bring a civil action under RICO. 18 U.S.C. § 1964(c). Ruderman brings her claim under § 1962(c), which makes it unlawful for any person employed by or associated with an enterprise engaged in commerce "to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." Thus, to state a claim under § 1962(c), Ruderman must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *See, Gamboa,* 457 F.3d at 705. "Racketeering activity" includes mail fraud, wire fraud, and bank fraud, and a pattern of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(1)(B), (5).

To state a claim for mail fraud, a plaintiff must allege "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." *Bible v. United Student Aid Funds, Inc.,* No. 14-1806, 2015 WL 4911412, at *20 (7th Cir. Aug. 18, 2015) (quoting *Williams v. Aztar Ind. Gaming Corp.,* 351 F.3d 294, 298–99 (7th Cir. 2003)). The elements of wire fraud differ only in that they require the use of interstate wires in furtherance of the scheme. *Id.* It is not necessary that the use of mail or wires "contain any false or fraudulent material . . . so long as that use is part of the execution of the scheme." *United States v. Sheneman,* 682 F.3d 623, 629–30 (7th Cir. 2012); *United States v. Hickok,* 77 F.3d 992, 1004 (7th Cir. 1996). A defendant can cause mail or wire to be used in the furtherance of a scheme without personally sending the mail or transmitting the wire. *Hickok,* 77 F.3d at 1004; *United States v. Ratliff-White,* 493 F.3d 812, 817 (7th Cir. 2007). Under the heightened pleading standard of Rule 9(b), "a RICO plaintiff must, at a minimum, describe the predicate acts of fraud with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 726 (7th Cir. 1998) (citation and internal alterations omitted), *holding modified by Brouwer v. Raffensperger, Hughes & Co.,* 199 F.3d 961 (7th Cir. 2000).

Freed first challenges the mail fraud allegations found in paragraph 100(i) of the Complaint. Here, Ruderman identifies several communications that Freed sent or caused to be sent in furtherance of the alleged scheme to purchase the shopping center using the forged UWF

Guaranties. The communications include: (1) an April 30, 2004 opinion letter from Foley & Lardner LLP concerning the UWF transaction, and (2) two letters dated April 27, 2004 from Freed agreeing to indemnify certain individuals who guaranteed portions of promissory notes in connection with the transaction. Freed argues that these communications provide no basis for a mail fraud claim because they do not contain any alleged misrepresentations. Freed also contends that under Illinois law, opinions — such as those contained in the Foley & Lardner letter — cannot be construed as misrepresentations.

The mail fraud statute makes it illegal to obtain money by a scheme that entails fraud "if use of the mail is integral to the scheme." *Phoenix Bond & Indem. Co. v. Bridge,* 477 F.3d 928, 932 (7th Cir. 2007) *aff'd sub nom. Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008). Ruderman need not allege that the letters themselves contain false statements because even "routine and innocent mailings can . . . supply an element of the offense of mail fraud" when they are used in the execution of the fraudulent scheme. *Hickok,* 77 F.3d at 1004; *United States v. Green,* 786 F.2d 247, 249 (7th Cir. 1986) ("The causal connection between the mailing and the success of the scheme, not the knavery in the mailings, is what matters.").

Paragraph 100(i) describes the contents of the communications with specificity and states that Freed caused the letters to be sent on April 30 and April 27 in furtherance of his scheme "to close on the UWF purchase" using the forged UWF Guaranties. Regardless of whether either letter contained misrepresentations or opinions, both were sent in furtherance of the alleged scheme to purchase a shopping center using

bogus guaranties. The Court therefore finds Ruderman has stated claim for mail fraud.

Freed next challenges the wire fraud allegations found in paragraph 100(ii) of the Complaint. Here, Ruderman identifies two wire communications that Freed caused to be transmitted in furtherance of the alleged scheme to purchase the shopping center: (1) a January 30, 2004 email from an employee of the Business to UWF's counsel concerning the transaction, and (2) a February 24, 2004 email from another employee of the Business to UWF's counsel concerning various aspects of the transaction. Freed argues that these communications provide no basis for a wire fraud claim because he Freed himself did not personally transmit them.

The Court disagrees. A defendant can "cause" a wire transmission without personally sending it if he acts with knowledge that the use of wires will occur in the ordinary course of business, or the use of wires can be reasonably foreseen. *Ratliff-White,* 493 F.3d at 817. Although paragraph 100(ii) does not allege that Freed himself sent the emails, it states that "in order to close on the UWF purchase with the forged UWF Guaranties, it was reasonably foreseeable to Freed . . . that Freed or his agents would communicate with UWF and exchange drafts via interstate email." At this stage, the Court finds these allegations sufficient to state a claim for wire fraud.

Accordingly, the Court denies Freed's Motion to Dismiss certain predicate acts of mail and wire fraud in Count I.

## B. Fraud and Fraudulent Concealment (Count V)

In Count V, Ruderman alleges that Freed engaged in common-law fraud and fraudulent concealment when he failed to disclose that Ruderman's name had been forged on documents including the UWF Guaranties and the Pledge. Freed urges the Court to dismiss the fraud claims in Count V because they are based upon omissions rather than false statements of material fact, and in any case, are not pleaded with particularity.

"In Illinois, a plaintiff can base a common law fraud claim on a fraudulent misrepresentation or on a fraudulent concealment of a material fact." *Future Envtl., Inc. v. Forbes,* No. 13 C 709, 2014 WL 3026485, at *4 (N.D. Ill. July 3, 2014) (citing *Trs. of AFTRA Health Fund v. Biondi,* 303 F.3d 765, 776 (7th Cir. 2002)). In cases involving concealment, the traditional fraud analysis requiring a false statement of fact is modified. *Williams v. Chicago Osteopathic Health Sys.,* 654 N.E.2d 613, 622 (Ill. App. Ct. 1995). Instead a plaintiff must allege that:

> (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages.

*Bauer v. Giannis,* 834 N.E.2d 952, 957–58 (Ill. App. Ct. 2005). A fiduciary duty gives rise to a duty to speak. *Future Envtl.,* 2014 WL 3026485, at *4. Although fraudulent concealment is an exception to the statute of limitations, *see,* 735 ILCS 5/13-215, it is also a "separate and distinct form[] of common law fraud." *Trs. of AFTRA Health,* 303 F.3d at 776.

Ruderman's fraud claim is not premised on a false statement of material fact. Although Ruderman argues that a document bearing a forged signature is, in itself, a "fraudulent misrepresentation," she cites no Illinois law in support of this proposition. The case she relies on, *United States v. Kamber,* does not help her cause. *United States v. Kamber,* 458 F.2d 918, 921–22 (holding that a defendant who submitted documents bearing a forged signature to the Selective Service had made a "false statement" under 50 U.S.C. § 462(a)).

Instead, Ruderman's fraud claim is based Freed's concealment that her signature had been affixed to certain documents, including the UWF Guaranties, the Pledge, and several others. Although Ruderman identifies the facts Freed omitted with particularity, Rule 9(b) also requires her to plead "the type of document in which they should have appeared and the way in which their omission made the documents misleading." *Fujisawa Pharm. Co. v. Kapoor,* 814 F.Supp. 720, 727 (N.D. Ill. 1993). In addition, missing from the Complaint is any allegation that Ruderman "could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection." *Bauer,* 834 N.E.2d at 958. Because Ruderman has failed to allege such facts in support of her fraudulent concealment claim, the Court dismisses Count V without prejudice.

### C. Violation of ICFA (Count VII)

Freed argues that the ICFA claim in Count VII should be dismissed because it is not pleaded with sufficient particularity under Rule 9(b).

ICFA makes it unlawful to engage in deceptive acts or practices in the course of trade or commerce, including "any deception, fraud, false

pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2. "Any person who suffers actual damage as a result of a violation of [ICFA]" may bring a private cause of action under the statute. *Id.* 505/10a.

To state a claim under ICFA, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occur in a course of conduct involving trade and commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deception." *Sound of Music Co. v. Minn. Min. & Mfg. Co.,* 477 F.3d 910, 923 (7th Cir. 2007) (citation omitted). Although ICFA claims must still be pleaded with particularity, a plaintiff is not required to show actual reliance or due diligence. *Davis v. G.N. Mortg. Corp.,* 396 F.3d 869, 883 (7th Cir. 2005).

In Count VII, Ruderman alleges that Freed deceived her "by omitting and concealing the material facts about signatures on documents, about DDL and its finances and about LDD." (Compl. ¶ 136.) Though this allegation, standing alone, fails to describe a deceptive act or practice with particularity, details are found elsewhere in the Complaint. Ruderman alleges that Freed concealed from her that her name had been forged on the UWF Guarantees, Pledge, and other documents, and that — to her detriment — Freed used these documents to purchase property or extend repayment periods for loans. Taking these allegations as true and viewing them in the light most favorable to Ruderman, the Court finds

that Ruderman has stated a claim under ICFA. Accordingly Freed's Motion to Dismiss Count VII is denied.

### D. Duty to Disclose Forbearance Agreements

Ruderman argues that prior to obtaining her signature on the Forbearance Agreements, Freed had a duty to disclose certain "facts about the Pledge and the Forbearance Agreements and their adverse impact" — including the fact that the Pledge Agreement existed and her name had been forged to it. (Compl., ¶¶ 44-48.) Freed asks the Court to dismiss all allegations based on his "duty to disclose the Forbearance Agreements" because Ruderman would have been aware of the forged Pledge had she simply read the Forbearance Agreements before signing them. (Def.'s Mem., ECF No. 27, at 9-10).

"Courts may dismiss a portion of a claim for relief contained within a count of a complaint when that portion is contrary to law." *Caine v. Burge,* No. 11 C 8996, 2012 WL 2458640, at *6 (N.D. Ill. June 27, 2012) (collecting cases). Freed appears to argue that any claims that hinge on his duty to disclose the Forbearance Agreements are "contrary to law" because of Ruderman's duty to read the agreements before signing. In general, "a party may not enter into a transaction with its eyes closed to available information and then charge that it has been deceived by another." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.,* 250 F.3d 570, 574 (7th Cir. 2001) (citation and internal alterations omitted).

Ruderman alleges that Freed had a duty to disclose the following material facts:

> (i) that the Pledge existed; (ii) that Freed or someone at his direction had forged Ruderman's name to the Pledge; (iii) that

the Pledge would nullify Ruderman's financial plan; (iv) that the Forbearance Agreements purported to validate the forged Pledge; (v) that the Pledge was the product of Freed's breach of his fiduciary duties to Ruderman and was invalid; and (vi) that Freed and the Bank had serious conflicts of interest with respect to the Forbearance Agreements.

(Compl. ¶ 48.) At the motion to dismiss stage, the Court cannot conclude that reading the Forbearance Agreements would have alerted Ruderman to all of the material facts she identifies. Moreover, it is unclear which of Ruderman's remaining claims — if any — hinge on Freed's concealment of these facts. The Court therefore denies this final portion of Freed's Motion.

## IV. CONCLUSION

For the reasons stated herein, Freed's Motion to Dismiss is granted in part and denied in part. The motion is granted as to Count V, which is dismissed without prejudice, and denied as to Counts I and VII and the allegations concerning the Forbearance Agreements. If Ruderman seeks to file an Amended Complaint, she is granted fourteen (14) days to do so.

**IT IS SO ORDERED.**

	Harry D. Leinenweber, Judge
	United States District Court

Dated: 9/10/2015